## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

DAVID TOM, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.

THOMAS ROOFING AND REPAIR
INC. and PINNACLE MARKETING
SOLUTIONS LLC,

     Defendants.

_____/

CIVIL ACTION FILE NO.

**COMPLAINT – CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiff DAVID TOM (hereinafter referred to as "Plaintiff"), individually

and on behalf of all others similarly situated, alleges on personal knowledge,

investigation of his counsel, and on information and belief, as follows:

## <u>NATURE OF ACTION</u>

1.    "Telemarketing calls are intrusive. A great many people object to

these calls, which interfere with their lives, tie up their phone lines, and cause

confusion and disruption on phone records. Faced with growing public criticism of

abusive telephone marketing practices, Congress enacted the Telephone Consumer

Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47

U.S.C. § 227). As Congress explained, the law was a response to Americans

'outraged over the proliferation of intrusive, nuisance calls to their homes from

telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3.     Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.     Tom also alleges that Defendants use automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendants have violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5.     Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6.     A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7.      Plaintiff David Tom is an individual located in the Middle District of Florida, in Brevard County.

8.      Defendant Thomas Roofing and Repair Inc is an Orlando based roofing company that uses illegal telemarketing calls to solicit business in this District.

9.      Defendant Pinnacle Marketing Solutions LLC is an Apopka, Florida-based telemarketer and lead generator that makes telemarketing calls into this District for Defendant Thomas.

## JURISDICTION AND VENUE

10.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

11.      This Court has general personal jurisdiction over Thomas and Pinnacle because they are registered in and have their principal places of business in this State.

12.      Venue is proper pursuant to 28 U.S.C. § 1391 because the telephone calls at issue were sent into this District.

## TCPA BACKGROUND

### The Enactment of the TCPA and its Regulations

13.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14.     Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

17.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Florida Telephone Solicitations Act

18.     The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

19.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

20.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

21.    Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

22.    Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

23.    Plaintiff Tom is also a "person" as the term is defined by 47 U.S.C. § 153(39).

24.     At no point has the Plaintiff consented to receive telemarketing calls from the Defendants regarding the sale of goods or services, including roofing services, prior to receiving the automated calls at issue.

<u>Calls to Plaintiff</u>

25.     Mr. Tom's residential telephone number is (321) XXX-XXXX.

26.     That telephone number is a residential telephone line used by Mr. Tom for personal calls and for personal, family, and household use.

27.     The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

28.     That telephone number is not associated with a business.

29.     Mr. Tom registered his residential telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time.

30.     Despite that, Mr. Tom received at least 2 automated calls from various "spoofed" caller IDs beginning with 239 area codes, including a call on April 8, 2024 at 5:01 pm from the caller ID 239-401-7490.

31.     Each call started with silence before a "bloop" sound and an agent joining the line. This sound is indicative of the ViciDial autodialer and is officially known as the "droplet" sound. It is played automatically as part of a macro when

the Asterisk "meetme" application is executed and signifies that a new connection was established between the called party and a call center representative.

32.     Furthermore, ViciDial comes programmed as standard to be able to randomize telephone numbers and caller IDs. The fact that the caller IDs were randomized also lends credence to the inference that the Plaintiff's telephone number was also randomized and randomly or sequentially generated.

33.     The caller on the April 8 call stated that he was "Charlie" from the illegally and fictitiously named "Central Florida Roofing Association" and was calling to solicit the Plaintiff for roofing services.

34.     The use of "Central Florida Roofing Association" as an unregistered fake name was knowingly and willfully done by the Defendants to hide their identities as the source of the illegal calls.

35.     The Plaintiff played along with "Charlie" to ascertain the true identity of the caller who was calling him illegally through such fake name and for no other reason. This included setting an appointment for the following day.

36.     "Charlie," who at first stated that he was with the "Central Florida Roofing Association," eventually stated that the true name of the company was Defendant Thomas.

37.     In fact, the Plaintiff also stated that he did not want calls from the Defendants and that they were only to email him to follow up.

38.     Despite this, the Plaintiff received a call from the caller ID 407-968-1918 on April 9, 2024 at around 3:18 pm from "Gaston Moons" to confirm an appointment between 4:00 pm and 5:00 pm.

39.     An individual arrived at the Plaintiff's property around that time and identified himself as with Defendant Thomas. Plaintiff met with the individual, informed him that he wanted to identify the source of the illegal call, pointed out after looking at the individual's phone screen that the details of the Plaintiff's lead on the individual's telephone stated that the Plaintiff had lodged a do not call request and stated not to call the Plaintiff, and so sent him packing.

40.     Thereafter, the Plaintiff contacted Defendant Thomas about the illegal, unwanted communications as well as Defendants' use of a fake name during the call. On or about April 18, 2024, Plaintiff was eventually put in contact with an attorney who claimed to represent the Defendants, and confirmed the Defendants' involvement, including that the call was made by Pinnacle on behalf of Thomas.

41.     However, despite this unequivocal assertion that he was not to be contacted and already speaking with the Defendants' attorney, the Plaintiff thereafter received yet another call from 863-388-4229 on April 18, 2024 at 2:10 pm.

42.    During that call, the Plaintiff was told that the purpose of the call was to "follow up" on the "proposal" for the Plaintiff's roof on April 9.

43.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

44.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

45.    The FCC has instructed that sellers such as Thomas may not avoid liability by outsourcing telemarketing to third parties, such as Pinnacle:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

46.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

47.     Thomas is liable for telemarketing calls placed by Pinnacle and transferred to Thomas to generate customers for Thomas, including the Plaintiff.

48.     Thomas was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones. Indeed, it was interested in hiring a lead generator that would be willing to hide its involvement and use fake names to do its dirty work.

49.     To do so, it hired Pinnacle to orchestrate an *en masse* telemarketing campaign.

50.     Thomas controlled the day-to-day activities of Pinnacle by providing the specific criteria for the leads it would accept and required its vendors, including Pinnacle, to adhere to those criteria.

51.     For instance, Thomas directed Pinnacle to lie about their identity as the "Central Florida Roofing Association" and only give customers Thomas' real name only upon request.

52.     Thomas authorized Pinnacle to use the Thomas trade name and

trademarks, authorized Pinnacle representatives to state that they were going to receive visits from Thomas and inform potentially interested persons that the calls were for Thomas.

53.    Thomas would not compensate Pinnacle for a call it made unless the leads it purchased met the criteria set by Thomas, including calls made subject to Thomas's audit.

54.    As such, Thomas controlled the content of Pinnacle's telemarketing and took steps to ensure it retained such control, such as by demanding the retention of and production of call recordings.

55.    Finally, Thomas could have terminated Pinnacle once it learned of Pinnacle's illegal marketing conduct.

56.    It did not.

57.    In fact, Pinnacle should know better than to violate the TCPA because its owner, Charles "Charlie" Marconne, Jr., is *himself* a plaintiff who has sued companies in state court for violating the TCPA.

58.    In this regard, Thomas hired Pinnacle, who is a habitual offender.

59.    Indeed, Thomas put complete trust in their third-party lead generator Pinnacle and directed them to handle all the illegal calling on its behalf and only transfer them customers that met criteria set by Thomas.

60.     A reasonable seller, let alone one hiring telemarketers who themselves are TCPA plaintiffs, would investigate why its telemarketers are calling numbers on the Do Not Call List with illegal fictitious names. They would not continue such misconduct by continuing to use such marketers and rely on them for scrubbing, registration, and regulatory compliance.

61.     Moreover, a reasonable seller, would also investigate into the reasons why their marketer would be calling numbers on the National Do Not Call Registry as an initial matter.

62.     Indeed, Thomas could have investigated if the transfers it received were on the National Do Not Call Registry, whether the leads purchased were legitimate, whether the calls illegally used fake names, or if Pinnacle was using automated means to send them.

63.     It did not.

64.     Thomas hired Pinnacle without a proper investigation and did not terminate them when they were informed of Pinnacle's illegal calling conduct.

65.     As such, they knowingly ratified Pinnacle's conduct.

66.     Thomas accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

67.     The 2013 FCC ruling holds that called parties may obtain "evidence

13

of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

68.    Plaintiff never consented to receive calls from Defendants.

69.    Plaintiff never did business with the Defendants.

70.    Based on the foregoing, it is evident that Defendants mass-dial calls indiscriminately, including to numbers on the Do Not Call Registry using the fictitious name "Central Florida Roofing Association."

71.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

72.    Plaintiff never provided his consent or requested these calls.

73.    The aforementioned calls to the Plaintiff were unwanted.

74.    The calls were non-consensual encounters.

75.    In fact, the Plaintiff requested multiple times throughout various of the calls that the calls stop, but they did not stop.

76.    Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they

were annoyed and harassed. In addition, the calls occupied their telephone lines,

rendering them unavailable for legitimate communication, including while driving,

working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action on behalf of himself and the following

classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

78.    Plaintiff proposes the following Class definitions, subject to

amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States
> whose (1) residential telephone numbers were on the National Do Not Call
> Registry for at least 31 days, (2) but who received more than one
> telemarketing call from or on behalf of Defendants, (3) within a 12-month
> period, (4) at any time in the period that begins four years before the date of
> filing this Complaint to trial.

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S.,
> who, (1) received a telephonic sales call from Defendants made from or into
> Florida regarding roofing goods and/or services, (2) using the same equipment
> or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

79.    Plaintiff is a member of and will fairly and adequately represent and

protect the interests of the classes as he has no interests that conflict with any of

the class members.

80.    Excluded from the Classes are counsel, the Defendants, and any

entities in which the Defendants have a controlling interest, the Defendants' agents

and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

81.    Plaintiff and all members of the Classes have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

82.    This Class Action Complaint seeks injunctive relief and money damages.

83.    The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

84.    Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

85.    The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

86.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

87.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a) Whether the Defendants used automatic equipment as defined by Florida law to send telemarketing calls;

(b) whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(c) whether Defendants' conduct constitutes a violation of the TCPA or FTSA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct; and

(e) whether Defendant Thomas is vicariously liable for calls placed by telemarketing vendors, including Pinnacle.

88.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has no interests which are antagonistic to any member of the Classes.

89.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

90.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

91.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. 227(b) on behalf of the Robocall Class**

92.     Plaintiff incorporates the allegations in paragraphs 1-92 as if fully set forth herein.

93.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff and members of the Class delivering automated messages.

94.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or

cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

95.   If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

96.   Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

97.   Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-92 as if fully set forth herein.

98.   Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

99.   It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a

connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

100.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

101.   Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

102.   In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

103.   Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

104.   As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting Defendants from calling telephone numbers advertising goods or services, except for emergency purposes, using a automated means in the future;

B.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

C.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation as their actual damages for violations of the FDUTPA, together with fees and costs of suit;

D.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

E.      Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: June 5, 2024

PLAINTIFF, individually and on behalf of all others similarly situated,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Lead Counsel